Filed 1/8/15  P. v. Bridgeman CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C071832 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F05075) |
| v. | |
| EDWARD HENRY BRIDGEMAN, | |
| Defendant and Appellant. | |

A jury convicted defendant Edward Henry Bridgeman on seven counts of lewd and lascivious acts with a child under the age of 14.  Before trial, the trial court granted the People's motion to admit evidence of other uncharged conduct:  that defendant had prior convictions in 1984 and 1989 for lewd and lascivious conduct and oral copulation with his niece.

1

Defendant now contends (1) the trial court abused its discretion in admitting the evidence of uncharged conduct because the evidence had little probative value and was unduly prejudicial; and (2) admission of the uncharged conduct evidence rendered his trial fundamentally unfair and violated his federal constitutional right to due process of law.

We conclude the trial court did not abuse its discretion in admitting the evidence of uncharged conduct, and defendant's due process claim lacks merit. We have also identified a clerical error in the abstract of judgment. We will affirm the judgment and direct the trial court to prepare a corrected abstract of judgment.

BACKGROUND

Joseph E. moved with his mother to Sacramento after the death of Joseph's father in 2004, when Joseph was eight years old. Joseph's mother began dating defendant, a friend of Joseph's father, in 2008. Defendant stayed with the mother and Joseph part time.

Joseph initially had a good relationship with defendant. At some point, however, Joseph confided to a neighbor that defendant had forced Joseph to have sex with Joseph's mother. The neighbor did not contact police but encouraged Joseph to tell someone at school. Joseph informed a teacher's aide.

A deputy sheriff interviewed Joseph at his school. Joseph told the deputy sheriff defendant forced him to have sex with his mother. Joseph said defendant held Joseph's penis and had Joseph put his penis in his mother's vagina. Joseph said defendant also made him kiss his mother's private parts. Joseph told the officer the incident happened before July 4, 2008. Joseph also related that defendant made him put his penis in defendant's mouth and anus, and defendant put his penis in Joseph's anus.

Joseph participated in a special assault forensic evaluation (SAFE) interview. He gave a detailed description of the sexual acts between him and defendant. He said

2

defendant showed him pornographic movies.  He also said defendant had him orally copulate his mother and suck on her breasts.

Among other things, the People charged that defendant and the mother committed lewd and lascivious acts with a child under the age of 14 years.  (Pen. Code, § 288, subd. (a).)[1]  The People alleged defendant had two prior serious felony convictions, qualifying him for enhanced punishment under the three strikes law (§§ 667, subds. (b)-(i), 1170.12) and the one strike law (§ 667.61, subd. (d)(1)).  Defendant and the mother were tried together but with separate juries.

Joseph testified at the trial.  He said defendant forced him and his mother to engage in intercourse after Joseph expressed curiosity about sex.  Joseph said defendant threatened Joseph and his mother with a kitchen knife.  According to Joseph, defendant ordered the mother to suck Joseph's penis.  Then defendant put Joseph's penis in the mother's vagina.  Joseph said he placed his penis in his mother's vagina on other occasions when defendant told him to do it.  Joseph also described an incident in which defendant put his mouth on the mother's vagina as Joseph watched, and defendant instructed Joseph to do the same thing.  Joseph said defendant also had Joseph put his mouth on his mother's breasts.  Joseph described another incident when defendant instructed Joseph to put his mouth on the mother's breasts and insert a dildo in her vagina.

Joseph further testified, on direct examination, about multiple sexual acts between defendant and him, when they were alone at the mother's apartment.  But on cross-examination, Joseph said he might be lying to protect his mother.  And on redirect examination, Joseph said none of the sexual acts he described actually happened.  He said

---

[1]  Undesignated statutory references are to the Penal Code.

his statements to his teacher's aide and the SAFE interviewer were lies. When asked why he had lied, Joseph answered he would do anything to get his mother home.

Nevertheless, on redirect Joseph reiterated that he and defendant had sexual intercourse with the mother. The People amended the information to delete allegations concerning sexual contact between defendant and Joseph based on Joseph's testimony on redirect examination.

The People called defendant's niece to testify about sexual offenses defendant committed against her when she was a minor. Defendant is the brother of the niece's mother.

The niece testified as follows:

Defendant was a truck driver and sometimes stayed with the niece's family. The niece was removed from her home because of abuse by her father. She lived in a group home, but visited her mother's home occasionally. Starting when the niece was six or seven years old, defendant rubbed her vagina, under her clothes, with his fingers on multiple occasions. He also put his mouth on her vagina. The contact occurred at the house of the niece's mother and on multiple occasions. In 1984, when the niece was 12 years old, someone reported defendant's conduct to police. Defendant pleaded no contest to violating section 288 (lewd and lascivious conduct on a child under the age of 14 years) on November 27, 1984. He received a prison sentence. In 1988, when the niece was 15 years old, defendant gave the niece a note offering to pay her money to allow him to continue to touch her. Defendant rubbed the niece's vagina and orally copulated her. He also tried to put his penis in her mouth. The incident occurred at the house of the niece's mother. Defendant pleaded guilty to violating section 288a (oral copulation) on November 16, 1989.

The People and defendant also presented expert witnesses to testify about child sexual abuse accommodation syndrome (CSAAS), which described characteristics that commonly occurred in children who were sexually abused. Dr. Anthony Urquiza

4

explained the five parts of CSAAS were (1) secrecy, (2) helplessness, (3) entrapment and accommodation, (4) delayed and unconvincing disclosure, and (5) retraction or recantation. Some victims who disclose abuse later deny they were abused because of pressure from family.

On the other hand, Dr. William O'Donohue said CSAAS was not generally accepted in the psychiatric community. He said that contrary to CSAAS, studies showed most children do not recant.

Before the conclusion of the People's case-in-chief, Joseph's mother pleaded guilty to two counts of violating section 288, subdivision (a) in exchange for an upper term sentence of eight years plus one-third the midterm of two years, for an aggregate sentence of 10 years in prison. The People dismissed the remaining counts against the mother. The mother did not testify at defendant's trial.

The jury convicted defendant on seven counts of lewd and lascivious acts with a child under the age of 14 (counts one through three and five through eight, which related to the allegations that defendant directed Joseph to put Joseph's penis in his mother's vagina and to put Joseph's mouth on the mother's vagina and breasts, and that Joseph engaged in the same conduct with the mother in defendant's presence). The jury found defendant not guilty on count four, which alleged that defendant directed Joseph to insert a dildo in his mother's vagina.

Defendant waived his right to a jury trial on the prior serious felony conviction allegations. The trial court found the allegations to be true. It denied defendant's motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 to dismiss the prior serious felony conviction allegations, and rejected defendant's claim that a life sentence would be cruel and unusual punishment. The trial court sentenced defendant to a determinate term of 30 years in prison, consecutive to an indeterminate term of 225 years to life in prison. On counts one, five and seven, the trial court imposed a consecutive term of 75 years to life in prison on each count pursuant to the one strike law and the

5

three strikes law, plus a 10-year prison term on each count pursuant to section 667, subdivision (a) (prior serious offense enhancement). The trial court imposed a concurrent term of 75 years to life in prison plus a 10-year prison term pursuant to section 667, subdivision (a) on each of the remaining counts (counts two, three, six and eight).

DISCUSSION

I

Defendant contends the trial court abused its discretion in admitting the evidence of uncharged conduct because the evidence had little probative value and was unduly prejudicial.

A

The parties filed pretrial motions concerning the admission of evidence that defendant sexually molested his niece when she was a minor. The People sought to admit the uncharged conduct evidence under Evidence Code section 1108 and they offered to prove the prior sexual offenses through the niece's testimony.

Defendant argued evidence of his prior uncharged sexual conduct with his niece should be excluded under Evidence Code section 352 because it was remote in time, involved egregious conduct, was factually dissimilar to the charged offenses, and was prejudicial because it involved the same crime charged in the current prosecution. Defendant further argued evidence of conduct on a particular occasion had little relevance regarding a person's character, and a person's character was a poor predictor of conduct on a subsequent occasion.

The trial court admitted the uncharged conduct evidence under Evidence Code sections 1108 and 352, but excluded evidence that defendant bound his niece in the 1988 incident. The trial court ruled the uncharged conduct evidence was relevant to Joseph's credibility and defendant's propensity to have sex with children who were around 12 years old. The trial court found that although the prior victim was female, the uncharged offenses had probative value because they were sufficiently similar to the

6

charged offenses. The similarities included the ages of the victims and that defendant was not a stranger to the victims, defendant shared a house or had a close relationship with the victims, and defendant committed a variety of sex acts. In addition, the trial court considered that the charged and uncharged offenses involved independent witnesses; the uncharged offenses were not so remote as to reduce their probative value; and the uncharged offenses resulted in convictions.

B

In general, evidence of a defendant's uncharged conduct is not admissible to prove a defendant's criminal disposition or propensity. (Evid. Code, § 1101, subd. (a); *People v. Kipp* (1998) 18 Cal.4th 349, 369.) But Evidence Code section 1108, subdivision (a) provides that in a criminal action in which a defendant is accused of a sexual offense, evidence of the defendant's other sexual offenses is not made inadmissible by Evidence Code section 1101 if the evidence is not inadmissible under Evidence Code section 352.

In enacting Evidence Code section 1108, the Legislature recognized that " 'sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial[, thus,] often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations.' " (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160, 1164; *People v. Falsetta* (1999) 21 Cal.4th 903, 915 (*Falsetta*).) Evidence Code section 1108 allows the trier of fact to consider uncharged sexual offense evidence as evidence of the defendant's propensity to commit sexual offenses in evaluating the defendant's and the victim's credibility and in deciding whether the defendant committed the charged sexual offense. (*Villatoro, supra,* 54 Cal.4th at pp. 1160, 1164, 1166-1167; *Falsetta, supra,* 21 Cal.4th at pp. 911-912, 922.)

However, uncharged sexual conduct evidence is inadmissible if the probative value of the evidence is substantially outweighed by the probability that its admission

7

will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (Evid. Code, §§ 352, 1108, subd. (a).) The probative value of uncharged sexual conduct evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity between the uncharged and charged acts, and the independent sources of evidence in each offense. (*Falsetta, supra*, 21 Cal.4th at p. 917.) The prejudicial impact of uncharged sexual conduct evidence is reduced if the uncharged act resulted in a criminal conviction and a substantial prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the uncharged act, and that the jury's attention would not be diverted by having to determine whether defendant committed the uncharged act. (*Ibid.*) We review a trial court's Evidence Code sections 352 and 1108 determinations under the deferential abuse of discretion standard. (*People v. Avila* (2014) 59 Cal.4th 496, 515.)

Defendant argues the uncharged offenses are substantially dissimilar from the charged offenses. But as the California Supreme Court explained in *People v. Loy* (2011) 52 Cal.4th 46, " '[t]he charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108.' " (*Loy, supra,* 52 Cal.4th at p. 63; see also *People v. Robertson* (2012) 208 Cal.App.4th 965, 991; *People v. Hernandez* (2011) 200 Cal.App.4th 953, 966; *People v. Britt* (2002) 104 Cal.App.4th 500, 504-506; *People v. Soto* (1998) 64 Cal.App.4th 966, 984 (*Soto*).) Similarity between the charged and uncharged offenses is just one of many factors for the trial court to consider in weighing the probative value and prejudicial impact of the uncharged conduct evidence pursuant to Evidence Code section 352. (*Falsetta, supra*, 21 Cal.4th at p. 917; *Robertson, supra,* 208 Cal.App.4th at p. 991) The charged and uncharged sexual offenses need not be identical to have probative value.

Although the charged and uncharged offenses involved in this case are dissimilar in some respects, such as the gender of the victims, the offenses share sufficient similarities to have probative value regarding Joseph's credibility and defendant's propensity to commit sexual offenses. Both victims were 12 years old when defendant sexually molested them. Defendant had access to the minors because he stayed at the homes of the minors' mothers. The charged and uncharged offenses included the same types of sexual acts, which occurred on multiple occasions. In addition, the fact that a witness other than Joseph supported the uncharged offenses and that such witness reported the misconduct before the current offenses occurred increased the probative value of the uncharged conduct evidence. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1287.)

Defendant claims it was speculative to infer from the uncharged conduct evidence that he was predisposed to commit the charged offenses because there was no evidence he had a sexual interest in boys or that men who molested girls were likely to sexually abuse boys. But this court rejected a similar argument in *People v. Escudero* (2010) 183 Cal.App.4th 302, which involved a charged offense involving a young girl and uncharged conduct involving two adult women. (*Id.* at pp. 305, 307-309.) This court said the similarities between the charged and uncharged offenses made the uncharged evidence highly probative, and it was not necessary to present additional evidence that a person who sexually assaulted adult women would be inclined to sexually molest a young girl. (*Id.* at pp. 311-312.)

Defendant cites *People v. Earle* (2009) 172 Cal.App.4th 372 for the proposition that commission of one kind of sexual act does not necessarily demonstrate a propensity to commit a different sexual act. The appellate court in *Earle* said evidence of a prior indecent exposure did not establish a predisposition to commit sexual assault. (*Id.* at p. 396.) *Earle* does not support defendant's argument because, here, the charged and

uncharged offenses involve the same kind of crime, lewd and lascivious act upon a child under the age of 14 years.

Defendant next argues the uncharged conduct evidence is too remote to have significant probative value. Although a 20- to 24-year gap between the charged and uncharged offenses is substantial, there is no bright line rule regarding whether a prior act is too remote to be admissible under Evidence Code section 352. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 405 [uncharged act occurred 12 years prior to trial]; *People v. Branch* (2001) 91 Cal.App.4th 274, 278, 281, 284 [uncharged sexual acts committed over 30 years before the charged offenses occurred were properly admitted under Evidence Code sections 1101 and 1108] *People v. Waples* (2000) 79 Cal.App.4th 1389, 1392-1393, 1395 [uncharged sexual acts that occurred 18 to 25 years before the charged offenses were not too remote for purposes of Evidence Code section 352]; *Soto, supra*, 64 Cal.App.4th at pp. 977-978, 990-992 [uncharged sexual conduct that occurred 20 to 30 years before the trial was properly admitted under Evidence Code sections 1108 and 352].) In this case the trial court did not abuse its discretion given the similarities between the crimes and the time periods when defendant was in custody. (*People v. Walker* (2006) 139 Cal.App.4th 782, 807 [similarities between charged and uncharged conduct and the defendant's incarceration for about 11 years offset any prejudice from the remoteness of a 20-year-old uncharged conduct]; *Branch, supra,* 91 Cal.App.4th at p. 285 [significant similarities between the prior and the charged offenses may balance out remoteness].)

Moreover, the niece's proposed testimony was not more inflammatory than the anticipated testimony concerning the charged offenses. The trial court excluded evidence that defendant bound his niece in the 1988 incident. In addition, defendant was convicted of the uncharged sexual offenses against his niece. Those convictions reduced the risk that the jury would be tempted to punish defendant for the uncharged acts and that the

10

jury's attention would be diverted by having to determine whether defendant committed the uncharged acts. (*People v. Balcom* (1994) 7 Cal.4th 414, 427.)

Furthermore, the record indicates the uncharged conduct evidence did not result in prejudice. The jury questions during deliberations did not refer to the uncharged conduct or the niece's testimony. And the jury did not convict defendant on all counts, indicating that it carefully considered the evidence and there was no emotional bias against defendant. The trial court's instructions to the jury also helped assure the jury would not convict defendant based solely on the uncharged evidence. The trial court instructed the jury that the uncharged conduct evidence was not sufficient by itself to prove that defendant committed the charged offenses, and the People must prove each charge beyond a reasonable doubt.

We conclude the trial court did not abuse its discretion in admitting the uncharged conduct evidence under Evidence Code sections 1108 and 352.

II

Defendant also contends admission of the uncharged conduct evidence rendered his trial fundamentally unfair and violated his federal constitutional right to due process of law. He repeats his claims that the uncharged offenses are remote and dissimilar to the charged offenses, and admission of his prior sexual offenses would convict him simply because he previously committed sexual offenses.

In general, "the application of the ordinary rules of evidence under state law does not violate a criminal defendant's federal constitutional right to present a defense, because trial courts retain the intrinsic power under state law to exercise discretion to control the admission of evidence at trial." (*People v. Abilez* (2007) 41 Cal.4th 472, 503.) A rule of evidence " ' "is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' [Citations.]" ' " (*Ibid.*) The California Supreme Court has held Evidence Code section 1108 does not violate the constitutional guarantee of due

11

process of law because it ensures evidence of uncharged sexual offenses cannot be admitted in cases where its probative value is substantially outweighed by the possibility that its admission will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. (*Falsetta, supra*, 21 Cal.4th at pp. 917-918, 920 [also noting Evidence Code section 1108 does not alter or reduce the prosecution's burden of proof].)

The record in this case shows the trial court carefully weighed probative value against prejudice. (*People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1104 [due process assertion necessarily depends on whether the trial court sufficiently and properly evaluated the proffered evidence under Evidence Code section 352].) We have concluded the uncharged conduct evidence was properly admitted under Evidence Code section 352. Defendant fails to show that the circumstances present were so extraordinary or unusual that admission of the Evidence Code section 1108 evidence violated his constitutional right to due process of law.

III

Although the parties did not raise the issue on appeal, we have identified a clerical error in the abstract of judgment. The abstract incorrectly states that the crimes were committed in 2009. We will direct the trial court to correct the abstract of judgment to reflect that the crimes were committed in 2008.[2]

DISPOSITION

The judgment is affirmed. The trial court is directed to correct the abstract of judgment to reflect that the crimes were committed in 2008, and to forward a certified

---

[2] Because the circumstances appear to be clear and noncontroversial, we will direct the trial court to correct the abstract in the interests of judicial economy without soliciting supplemental briefing. Any party aggrieved may petition for rehearing. (Gov. Code, § 68081.)

copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

                                        _____MAURO_____, J.

We concur:

_____BLEASE_____, Acting P. J.

_____DUARTE_____, J.