Filed 1/13/15  P. v. Robles CA2/6
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADRIAN ROBLES,<br><br>    Defendant and Appellant. | 2d Crim. No. B248339<br>(Super. Ct. No. 1332819)<br>(Santa Barbara County) |

Adrian Robles appeals a judgment after conviction by jury of first degree murder of Robert Burke Simpson (Pen. Code, §§ 187, subd. (a), 189)[1] and street terrorism (§ 186.22, subd. (a)), with findings that he committed the murder under the special circumstance of being an active gang member furthering the activities of a gang (§ 190.2, subd. (a)(22)); to benefit a gang (§ 186.22, subd. (b)(1)(C)); with personal use of a deadly weapon (§ 12022, subd. (b)(1)).  The trial court found true allegations that Robles served a prior serious felony conviction for witness dissuasion and suffered a prior prison term within five years of the current offense.  (§§ 136.1, subd. (b), 667, subd. (a)(1), 667, subds. (d)(1) & (e)(1), 1170.12, subds. (b)(1) & (c)(1), 1192.7, subd. (c)(1), 667.5, subd. (b).)

Robles contends (1) the trial court abused its discretion when it admitted prejudicial evidence of a prior offense; (2) the gang expert's testimony was insufficient to

---

[1] All statutory references are to the Penal Code unless otherwise stated.

support the gang findings; and (3) he is not guilty of street terrorism because he acted alone. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Evidence of the Charged Offenses*

Robles is an active member of the Santa Barbara Westside criminal street gang ("Westside"). He spent the afternoon of April 15, 2010, at Hendry's Beach in Santa Barbara, drinking beer with other gang affiliates, Rudy Gallegos, Brittany Weiler, and Vanessa Ochoa. Gallegos is an active Westside member. Weiler and Ochoa are Westside associates. Robles was 20 years old and Gallegos was about the same age. They had known each other since childhood. They are similar in appearance, except that Gallegos had a "P" tattooed on his face.

Robles and his companions sat at a picnic table that was marked with Westside graffiti, including Robles's and Gallegos's gang monikers. Gallegos testified that Westside does not claim that picnic table. Robles and Gallegos had visible Westside tattoos.

Robert Burke Simpson was also at the beach on April 15 with a group of friends, drinking beer. Simpson's group identify themselves as "the pit crew," and is not associated with a gang. The pit crew regularly spends time at Hendry's beach. Its members are about 20 years older than Robles's group.

The two groups interacted peacefully at first. At one point, either Robles or Gallegos took a small folding knife from his pocket and explained to members of Simpson's group how to use it to kill someone.

Late in the afternoon, Robles, Weiler and Ochoa used the public restroom at the beach. Simpson and a companion blocked the door to the men's room so that Robles could not leave. Weiler and Ochoa yelled to Gallegos for help. Gallegos told the men to let Robles leave. Simpson called Gallegos a "bitch."

Simpson challenged Gallegos to a fight. Gallegos followed him to a grassy area where they fought with their fists. Gallegos struck only one blow before Simpson pinned him to the ground and struck him several times. Simpson shook Gallegos's hand.

2

When Simpson walked away, Robles stabbed Simpson in the neck. The knife cut a carotid artery and Simpson died quickly despite immediate attention from two nurses who were present.

Robles, Weiler, and Ochoa ran to Weiler's car. Before driving away, they pulled alongside Gallegos, who got into the car with them. According to Gallegos, while they were in the car, Robles showed Gallegos the bloody knife. Weiler's car had Westside graffiti on the windshield.

Many people witnessed the murder and testified at trial. Identifications conflicted. There was evidence from which a jury could have found that either Robles or Gallegos stabbed Simpson.

Two eyewitnesses identified Robles in lineups as the stabber, and two more eyewitnesses identified him in the courtroom as the stabber. Gallegos cooperated with the investigation and testified for the prosecution at trial. He testified that he saw Robles stab Simpson. On the hood of Weiler's car, detectives found a drop of Simpson's blood near Robles's handprint.

Detective Jarrett Morris testified as a gang expert. He opined that Simpson was killed for the benefit of the Westside street gang. He described the Westside gang's pattern of criminal activity, and the expectation that its members engage in crime in order to enhance respect for the gang. Morris testified that Simpson disrespected the gang when Simpson blocked Robles from leaving the bathroom, called Gallegos a bitch, and beat Gallegos in the fight. He testified that in these circumstances a gang member such as Robles would believe it was necessary to commit violence against Simpson in order restore the Westside's reputation, especially when so many people had witnessed Simpson's disrespectful conduct. Morris said that such a killing would enhance the violent reputation of the Westside gang when "the information gets out there." He said, "It's a tight network . . . . [Members] from rival gangs hear[] about [Robles's] crime, [and] hear[] how brazen he was to commit the crime in broad daylight at a public beach."

3

*Evidence of Uncharged Offenses*

Over defense objection, the trial court allowed Morris to testify about Robles's prior conviction for witness dissuasion as one of the prior felonies that established the Westside gang's predicate pattern of criminal activity. The court admitted evidence to prove the gang allegations and motive for murder, but did not allow evidence to be used to prove identity, because the prior incident was dissimilar to the charged offense. (Evid. Code, § 1101, subd. (b).)

Morris testified that Robles pled guilty to dissuading a witness in 2008 after he and his brother made "threats of death," yelled "Westside," and referred to a victim as an "Eastsider," and a "cheeser." He said Robles had an illegal switchblade knife during the incident. Morris said that "cheeser" is a term used by Westside members to describe members of the rival "Eastside" gang when they cooperate with law enforcement. Morris testified that Robles admitted he committed the prior offense while he was an active member of the gang and to benefit the gang.

Morris described other contacts between Robles and law enforcement in which Robles was found in the company of Westside members or affiliates. In 2004, Robles and other juveniles were detained for possessing a stolen bicycle. In 2005, he and others were found inside parked cars on a car lot. In 2006, he was involved in a gang-related stick fight among juveniles, he and another gang affiliate taunted people in violation of probation, and he participated in a large gang fight in Eastside territory during which members of both gangs used sticks and bats. In 2007, a probation search of Robles's residence uncovered various papers indicating his gang membership. In 2008, he registered with the Santa Barbara Police Department as a member of the Westside gang as required by section 186.30. Morris testified that while Robles was in jail awaiting trial on the current charges, Robles and another Westside member harassed a chaplain. On its own motion, the trial court excluded any further reference to gang associations that occurred after the date of the charged offense, pursuant to Evidence Code section 352.

During Morris's testimony, the trial court admonished the jury to consider Robles's prior gang activity "only for the limited purpose of deciding that the Defendant

4

acted with the intent, purpose and knowledge that are required to prove," (1) "the gang enhancement charge," (2) "the special circumstance allegation," (3) "the street terrorism charge," or (4) "as evidence that the defendant had a motive for committing the crimes charged." It said, "You may not consider the evidence for any other purpose. You may not conclude from the evidence that the Defendant is a person of bad character or that he had a disposition to commit the crime alleged in Count 1 which is the murder." It reiterated, "[T]he evidence . . . cannot be used [as] character evidence to prove the defendant is guilty of murder."

The prosecutor subpoenaed the victim of the 2008 witness dissuasion, but the victim refused to testify. When the court indicated it would hold the victim in contempt, defense counsel agreed that the prosecutor could present the victim's statements through the officers who took them, because counsel saw "no reason to do this to a citizen." The witness was excused. The trial court told the prosecutor, "[U]nder 352, I'm going to limit . . . how much we get into the [2008] offense. I don't know . . . how many police reports there are, I don't know how much you're seeking to introduce."

Two police officers testified about the 2008 offense. One conveyed the victim's statements, and both described their personal observations. Defense counsel did not object or ask the court to limit their testimony. The victim was a business owner, who asked Robles and his companions not to smoke marijuana behind his store. Robles told him, "'Come out here, white boy. I am going to fucking shank you.'" The next day, Robles and his companions returned and tried to kick the business owner's door down. The business owner was afraid they would stab him, so he called the police. The officers testified that during the arrest Robles was belligerent, shouted gang slogans, and referred to the victim's son using his Eastside moniker. They found an illegal switchblade in Robles's pocket. The trial court took judicial notice of the 2008 conviction and instructed the jury to accept as true the fact of the conviction and the gang enhancement. After the testimony of each officer, the court repeated its admonishment to the jury to consider the evidence only for a limited purpose. It reminded the jury the evidence "[cannot be] used by you to convict Mr. Robles of the murder charge."

5

At the close of trial, the jury instructions included a statement that Robles previously was convicted of witness dissuasion and repeated the limiting instruction. In closing argument, defense counsel conceded that Robles was guilty of street terrorism "assuming [Gallegos] committed the murder, [Robles] . . . helped [Gallegos] get away," but urged the jury to find Robles not guilty of murder because there was reasonable doubt as to the killer's identity. Counsel reminded the jury, "The Judge has told you [that] you can't consider all that gang evidence we listened to for two days as evidence that he committed the murder."

## DISCUSSION

### *Evidence of Prior Witness Dissuasion Offense*

Robles contends the trial court should have excluded evidence of his prior conviction for witness dissuasion because it was unduly prejudicial. (Evid. Code, § 352; 352; *People v. Ewoldt* (1994) 7 Cal.4th 380, 404, superseded by statute on other grounds as stated in *People v. Britt* (2002) 104 Cal.App.4th 500, 505.) Robles contends that, because the identity evidence conflicted, there was an undue risk that the jury would use the prior offense to infer that he, rather than Gallegos, stabbed Simpson and that he had a propensity to threaten non-gang members with knives. In the alternative, Robles contends that the court abused its discretion when it allowed three witnesses to provide cumulative factual details that unduly emphasized the prior offense.

A trial court may, in its discretion, exclude evidence if its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (Evid. Code, § 352.) We review its decision for abuse of discretion. (*People v. Kelly* (2007) 42 Cal.4th 763, 783, 785.) Uncharged offenses are only admissible if they have substantial probative value, because they are inherently prejudicial. (*People v. Ewoldt*, *supra*, 7 Cal.4th 380, 404.) When a gang enhancement is alleged, "[e]vidence of past or present conduct by gang members involving the commission of one or more of the statutorily enumerated crimes is relevant in determining the group's primary activities." (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323.) The trial court may admit the defendant's own prior

6

convictions to prove the predicate pattern of gang activity. (*People v. Tran* (2011) 51 Cal.4th 1040, 1044.)

We consider several factors when weighing the probative value and prejudicial effect of evidence of uncharged offenses. (*People v. Ewoldt*, *supra*, 7 Cal.4th 380, 404.) The evidence of Robles's prior offense had a strong tendency to establish his knowledge of the gang's criminal activity and his active participation in it. It also served as proof of a predicate Westside criminal offense. Witness intimidation is not as inflammatory as murder. (See *Ewoldt*, at p. 405.) That the offense led to conviction enhances its probative value. (*Id.* at pp. 404-405.) The source of the evidence was independent of the evidence of the charged offenses, reducing its prejudicial effect. (*Id.* at p. 405.) No great period of time elapsed between the two offenses. (*Ibid.*) The totality of the circumstances supports the trial court's decision to admit the evidence of Robles's prior conviction.

The evidence did not pose an intolerable risk to the fairness of the proceedings or the reliability of the outcome. (*People v. Waidla* (2000) 22 Cal.4th 690, 724.) The trial court's instructions greatly reduced the possibility that the jury would consider the prior offense as evidence of propensity or identity. The trial court refused to admit the evidence for the purpose of proving identity, and repeatedly admonished the jury that it could not use the evidence as proof that Robles murdered Simpson or that Robles had a propensity to commit crimes.

The evidence conclusively established that Robles is an admitted gang member. Robles is correct that evidence of uncharged acts cannot be used to prove something that other evidence showed was beyond dispute. (*People v. Lopez* (2011) 198 Cal.App.4th 698, 715.) But the prosecution was also required to prove that Robles "actively participate[d]" in the gang "with knowledge that its members engage in or have engaged in a pattern of criminal gang activity"; that he "willfully promote[d], further[ed], or assist[ed]" felonious conduct by the gang's members (§ 186.22, subd. (a)); that he carried out the murder "to further the activities of [a] criminal street gang" of which he was an "active" member (§ 190.2, subd. (a)(22)); and that he acted "for the benefit of, at the

7

direction of, or in association with [a] criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) Robles admitted none of these facts. His prior participation in threatening conduct against a business owner, in concert with other Westside members, had a tendency in reason to prove them. "In prosecutions for active participation in a criminal street gang, the probative value of evidence of a defendant's gang-related separate offense generally is greater because it provides direct proof of several ultimate facts necessary to a conviction." (*People v. Tran*, *supra*, 51 Cal.4th 1040, 1048, italics omitted.) This case is no exception.

The prosecution could have used evidence of other gang members' crimes to prove the predicate offenses, but it was not required to do so. "[T]hat the prosecution may have the ability to develop evidence of predicate offenses committed by other gang members does not require exclusion of evidence of a defendant's own separate offense to show a pattern of criminal gang activity." (*People v. Tran*, *supra*, 51 Cal.4th 1040, 1044.)

Robles forfeited his contention that, even if the prior offense were admissible, the trial court should not have allowed two police officers to testify to the underlying details. (See *People v. Tran*, *supra*, 51 Cal.4th at p. 1049 [even where a prior gang-related offense is admissible, the trial court may exclude details that tend to inflame].) Robles agreed not to object to the officers' testimony about the victim's statements and he did not ask the court to limit their testimony. Futility is not evident from the record. The court expressed its willingness to limit the officers' testimony. Moreover, the officers' testimony was not unduly cumulative or time consuming. They each briefly supplied their personal observations. Only one officer heard and reported the victim's statements. His testimony was a necessary factual basis for the expert's opinions regarding Robles's gang activities.

*Gang Special Circumstance and Gang Enhancement*

Robles contends the record does not support the jury's findings that the gang special circumstance and enhancement allegations are true. He argues there was no factual basis for the expert's opinion that the gang's reputation would be enhanced by the murder. We review the entire record in the light most favorable to the judgment to determine

8

whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the enhancement true beyond a reasonable doubt. (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

The record includes substantial evidence that Robles, an active Westside member, carried out the murder "to further the activities of" the gang (§ 190.2, subd. (a)(22)) and that he acted "for the benefit of, at the direction of, or in association with" the gang "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) The gang expert offered the opinion that Robles acted in response to Simpson's three disrespectful acts toward the gang members, in order to restore and enhance the gang's reputation, as well as his own reputation within the gang, after being publicly humiliated. Percipient witnesses described the three disrespectful acts. They testified that Robles and Gallegos appeared to be "gangsters," "gangster types," or "gangbanger types," with visible tattoos. Robles's gang moniker, "Wacko," was scratched into the bench where they sat, along with other Westside graffiti. Robles and Gallegos left with gang associates in a car that was marked with Westside graffiti. Lay witnesses did not specifically describe the tattoos as "Westside" tattoos, but the tattoos were displayed and explained to the jury at trial. A reasonable inference could be drawn that rival gang members would learn that the murder was committed by Westside and its reputation for violence would be enhanced.

This case is unlike *People v. Ochoa* (2009) 179 Cal.App.4th 650, in which an expert's testimony could not support a gang enhancement unaccompanied by a factual basis. In *Ochoa*, the defendant committed a carjacking alone, outside gang territory, where there was no gang graffiti; he had no observable tattoos, and did not display any gang signs, call-out the name of a gang, or claim the crime. (*Id.* at pp. 652-655, 662.) The victim thought he was involved in a gang only because he was "Mexican with short hair." (*Id.* at p. 653.) An expert's testimony that carjacking can benefit a gang by providing transportation was insufficient to support a gang enhancement. Here, there was evidence that Robles was accompanied by Westside affiliates, marked the scene with gang graffiti,

9

had observable Westside tattoos, escaped in a car marked with Westside graffiti, and claimed the crime when he showed another gang member the bloody knife.

*Street Terrorism Conviction*

Robles asks us to reverse the street terrorism conviction because there is no evidence that whoever killed Simpson acted in concert with another gang member. We disagree.

Street terrorism requires proof that the defendant, an active gang member, "willfully promote[d], further[ed], or assist[ed] in any felonious criminal conduct by members of that gang." (§ 186.22.) The crime cannot be committed by one who acts alone. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1132 [section 186.22 "requires that felonious criminal conduct be committed by at least two gang members"].)

But Robles did not act alone. He was accompanied before, during, and after the murder by another gang member (Gallegos) and two gang associates (Weiler and Ochoa). The four Westsiders acted as a group in support of each other. The altercation began when Gallegos came to the aid of his fellow gang members at the public restroom. It continued when Robles vindicated his fellow gang member by stabbing Simpson. And it ended with the four gangsters escaping in Weiler's gang-embellished car.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

10

Brian E. Hill, Judge

Superior Court County of Santa Barbara

_____


Susan B. Lascher, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David F. Glassman , Deputy Attorney General, for Plaintiff and Respondent.