[No. C039621. Third Dist. Dec. 17, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS RICHARD BRITT, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III through IX.

**COUNSEL**

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Stan Cross and Justain P. Riley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CALLAHAN, J.**—A jury convicted defendant Douglas Richard Britt of one count of burglary (Pen. Code, § 459), one count of indecent exposure (*id.,* § 314, subd. 1), and one count of annoying or molesting a child (*id.,* § 647.6, subd. (a)). Special allegations that Britt had sustained a prior misdemeanor indecent exposure conviction and a 1987 felony conviction for lewd and lascivious conduct with a child (*id.,* § 288, subd. (a)) were found true in separate proceedings.

Britt appeals from a judgment sending him to state prison for 17 years. He claims insufficiency of the evidence to support his conviction, improper admission of uncharged instances of sexual misconduct, and instructional error. He also seeks reversal of his convictions under the "special versus general" doctrine and attacks his sentence on constitutional grounds. We reject these arguments and affirm.

### BACKGROUND

On January 17, 2000, 14-year-old Heather H. and her 10-year-old sister Sarah H. were living with their mother at the Canyon Terrace Apartments in Folsom. The sisters shared the same bedroom. The previous night they had closed and locked their bedroom window and drawn the blinds. The screen, however, had been removed a few days earlier.

Heather awoke to the sound of her alarm clock going off sometime between 6:00 and 6:30 a.m. Looking up, she saw a man standing at the open window, raising the blinds. The man started to unzip his pants. His hand moved to the area of his genitalia, and his arm began moving up and down. The man was "[j]acking off basically," while he looked through the window at Heather and her sleeping sister. She could not get a good look at his face because of the shadows and trees, so she went into the front room and dialed 911.

Folsom Police Officer Patrick Mefferd received a report of a prowler at the apartment at 6:28 a.m. Arriving at Heather's apartment, he took a statement from Heather and examined the bedroom area. The window, which opened sideways, was clean except for two latent fingerprints in the lower right corner, where someone would normally place a hand to slide the window open. The fingerprints were later determined to be Britt's.

Although Heather was unable to identify Britt in a photo lineup, her sister Sarah H. identified his photograph. She had seen him twice before around

the Canyon Terrace Apartment complex. On the first occasion, she was emptying the garbage in an outside Dumpster; when she turned around Britt said to her, "nice butt." The second time, while she was riding her bike, he stopped and stared at her, making her feel uncomfortable.

Two witnesses testified as to Britt's propensity for committing sexual misconduct. Lynn B. testified that in 1978, she was driving in her car in Orange County and stopped for a red light. Britt, who was driving a delivery-type truck with a side door, pulled alongside and honked to gain her attention. When she looked over, he opened the door, and appeared completely nude, masturbating in front of her with a full erection. Britt was caught immediately and pleaded guilty to misdemeanor indecent exposure.

Sara M., who was 22 years old at the time of trial, testified that Britt moved in next door to her when she was 10 or 11. Britt used to drink and offer her alcohol, saying it would "make [her] horny." He was always making sexual comments to her. Several times he went to her window at night, waking her and speaking to her. Once, when Sara was 12, Britt told her to come to the corner of her backyard where it met his backyard, because he wanted to show her something. When she arrived there, she saw him standing in front of the sliding glass door at the back of his house, completely naked.

Britt's defense was alibi. Both he and a coworker, Keith Armour, testified that at 6:00 a.m. on the day of the incident, which was Martin Luther King Jr., Day, the two met at Armour's apartment in Orangevale and went fishing at Granite Bay after stopping at a Raley's supermarket to obtain a fishing license. Britt produced a Raley's receipt, which was time-stamped January 17, 2000, at 7:12 a.m.

Britt categorically denied exposing himself to either Lynn B. or Sara M. While he could not think of any reason why Lynn B. would fabricate her testimony,[1] he asserted that Sara M. wanted to get back at him for his having learned that she stole her mother's wedding ring 10 years earlier.

As to the fingerprints, Britt claimed that after he injured his arm in November 1999, he sometimes used the jacuzzi at the apartment complex. On one of these occasions, he realized he did not bring along a towel; coincidentally, he saw a towel lying on a window screen leaning against a

---

[1] Britt admitted he was convicted of indecent exposure in the Lynn B. case while represented by counsel, but claimed that he understood the plea "nolo contendere" to mean "not guilty." The sentencing judge did not place him on probation or impose any other punishment, but instead told him to report to spring training camp with the Pittsburgh Pirates.

wall. Britt said he lifted the towel off the screen and used it, leaving it at the jacuzzi. He did not need to and did not touch a window.[2]

APPEAL

I[*]

*Substantial Evidence*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

II

*Admission of Section 1108 Evidence*

Over Britt's objection, the trial court admitted the testimony of Lynn B. and Sara M. concerning prior incidents of sexual misconduct by Britt under Evidence Code sections 1108 and 1101, subdivision (b) to prove "propensity" and "intent."[4]

■ Britt contends the trial court abused its discretion in admitting the testimony of the two women, but his theory is an unusual one. Eschewing the traditional section 352 analysis, Britt urges that the evidence should have been excluded because the jury could too easily have used other crimes evidence to prove identity. According to this theory, section 1108 allows uncharged misconduct evidence only to prove "propensity," not identity. Using uncharged misconduct to prove identity is improper because section 1108 did not change the existing requirement of section 1101, subdivision (b) that, to be admissible as evidence of *identity*, the prior uncharged misconduct " 'must be so unusual and distinctive as to be like a signature.' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 403 [27 Cal.Rptr.2d 646, 867 P.2d 757].) Because the "signature" test was not met as to the other crimes evidence in this case, Britt asserts the prejudicial effect of the testimony clearly outweighed its probative value.

Britt's argument fails because it is based on an incorrect characterization of the effect of section 1108 on the admission of uncharged sexual misconduct in a sex offense case.

---

[2]Prior to trial and out of the presence of the jury, Britt admitted that in 1987, he had been convicted of violating Penal Code section 288, subdivision (a) (lewd and lascivious conduct with a child under the age of 14). Exercising its discretion, the trial court prevented the jury from learning of this conviction, even after Britt denied, on cross-examination, ever having been "sexually excited" by children.

[*]See footnote, *ante*, page 500.

[4]All further unspecified statutory references are to the Evidence Code.

Prior to the enactment of section 1108, section 1101 governed the use of evidence of prior uncharged sexual misconduct in a criminal trial. Subdivision (a) declared the general rule that character evidence (including evidence of prior bad acts) was inadmissible to prove a person's conduct on a specified occasion. Subdivision (b), however, carved out an exception to this rule: uncharged misconduct could be admitted to prove some fact *other than a mere disposition to commit such an act* such as motive, intent, identity, or plan. (See *People v. Falsetta* (1999) 21 Cal.4th 903, 911 [89 Cal.Rptr.2d 847, 986 P.2d 182] (*Falsetta*).) As Britt correctly points out, under case law interpreting section 1101, subdivision (b), an extremely high degree of similarity between charged and uncharged crimes was required to establish the uncharged crime's admissibility to prove identity. "For identity to be established, the uncharged misconduct and the charged offense must share common features that are sufficiently distinctive so as to support the inference that the same person committed both acts. [Citation.] 'The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' [Citation.]" (*People v. Ewoldt, supra,* 7 Cal.4th at p. 403; see also *People v. Balcom* (1994) 7 Cal.4th 414, 424-425 [27 Cal.Rptr.2d 666, 867 P.2d 777].)

All of that radically changed with respect to sex crime prosecutions with the advent of section 1108. Determining that, in a sex offense prosecution, the need for evidence of prior uncharged sexual misconduct is particularly critical given the "serious and secretive nature of sex crimes and the often resulting credibility contest at trial" (*People v. Fitch* (1997) 55 Cal.App.4th 172, 181-182 [63 Cal.Rptr.2d 753]), the Legislature enacted section 1108, which provides that evidence of a prior sexual offense "is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." By removing the restriction on character evidence in section 1101, section 1108 now "permit[s] the jury in sex offense . . . cases to consider evidence of prior offenses *for any relevant purpose*" (*People v. James* (2000) 81 Cal.App.4th 1343, 1353, fn. 7 [96 Cal.Rptr.2d 823], italics added), subject only to the prejudicial effect versus probative value weighing process required by section 352.

Evidence is relevant if it has any "tendency in reason to prove or disprove any disputed fact." (§ 210.) Where contested, the *identity* of the defendant as the perpetrator is obviously a disputed issue of fact. The introduction of other crimes evidence to prove identity thus constitutes a "relevant purpose."

The flawed premise in Britt's argument is that section 1101, subdivision (b)'s test for admissibility of prior uncharged offenses in a sex offense case survived the enactment of section 1108. It did not. "In enacting Evidence

Code section 1108, the Legislature decided evidence of uncharged sexual offenses is so uniquely probative in sex crimes prosecutions it is presumed admissible *without regard to the limitations of Evidence Code section 1101.*" . (*People v. Yovanov* (1999) 69 Cal.App.4th 392, 405 [81 Cal.Rptr.2d 586], italics added.) When section 1108 swept away the general prohibition on character evidence set forth in section 1101, it rendered moot the exceptions to that prohibition created by section 1101, subdivision (b). Thus, in a sex crime prosecution, the "signature test" is no longer the yardstick for admission of uncharged sexual misconduct to prove identity.

We disagree with Britt's unsupported assertion that the Legislature intended section 1108 to allow admission of uncharged sex offenses only where the defendant's identity as the perpetrator has already been established, not to help establish the fact of identity.

As stated by the California Supreme Court, quoting the author of the legislation, section 1108 " ' "permits courts to admit such evidence on a common sense basis—*without a precondition of finding a 'non-character' purpose* for which it is relevant—and permits rational assessment by juries of evidence so admitted. This includes consideration of the other sexual offenses as evidence of the defendant's disposition to commit such crimes, *and for its bearing on the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense.*" ' " (*Falsetta, supra,* 21 Cal.4th at p. 912, italics added, quoting from letter by Assemblyman Rogan re Assem. Bill No. 882 (1995-1996 Reg. Sess.) reprinted at 29B pt. 3 West's Ann. Evid. Code (1999 supp.) foll. § 1108, pp. 40-41.)

Sex crime trials inevitably turn on whether the defendant has been falsely accused. The central issue in these cases commonly involves not just whether the conduct took place as the victim described it, but whether the defendant was the one who perpetrated it. Section 1108 assists the jury's task by allowing the accused's sexual misconduct history to be considered for whatever light it might shed on these issues, including a defendant's claim of mistaken identity.

Since the trial court correctly admitted the testimony concerning the uncharged offenses under section 1108, we need not reach the question of its admissibility under section 1101. And since Britt does not otherwise assert the trial court abused its discretion in weighing the prejudice of the evidence against its probative value, the claim must fail.

III-IX*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 19, 2003.

---

*See footnote, *ante*, page 500.