Filed 2/25/13  P. v Johnson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>LEON JOHNSON,<br><br>        Defendant and Appellant. | D061029<br><br><br><br>(Super. Ct. No. SCD227291) |

APPEAL from a judgment of the Superior Court of San Diego County, Charles G. Rogers, Judge.  Affirmed.

I.

INTRODUCTION

Defendant Leon Johnson appeals from a judgment entered after a jury convicted him of first degree murder in the killing of victim Angie Borrayo in 1975.  On appeal, Johnson contends (1) that the trial court abused its discretion in permitting the prosecutor to introduce evidence of other sex crimes Johnson had committed, and (2) that the trial

court violated his Sixth Amendment right to confront a witness when the court admitted a witness's prior statement after determining that the witness was effectively unavailable due to her inability to recall many of the events.

We conclude that the trial court did not abuse its discretion in permitting the prosecutor to introduce evidence of other uncharged sexual offenses that Johnson committed. We also reject Johnson's contention that the trial court erred in admitting a witness's prior statement after determining that she was an unavailable witness. As Johnson concedes, the Supreme Court has already decided this issue against him. We therefore affirm the judgment of the trial court.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual background*

On the night of November 22, 1975, Borrayo was working at the Twilight Massage Parlor in downtown San Diego. Another woman, Sonia Saragosa, was also working at the massage parlor that evening. According to Saragosa, Borrayo would sometimes engage in acts of prostitution at the parlor.

That night, Johnson and another man came into the shop. Borrayo filled out a receipt ticket with the notation "6:40 to 7:10" and took Johnson, who had identified himself as "Leon," to the back room. Saragosa waited in the reception area with the other man. The other man indicated to Saragosa that he was in the military, and showed her a green military identification card. The man kept pestering Saragosa to go into another room with him, but Saragosa declined.

2

At some point, Borrayo came out of the back room. She was wearing her dress, but did not have on her nylons or shoes. Borrayo was smiling and got a cigarette. Borrayo returned to the back room.

Saragosa soon heard "banging on the wall." Shortly thereafter, Johnson came out from the back and left the massage parlor. Borrayo did not emerge from the room. After a few minutes, Saragosa went to check on Borrayo. Saragosa saw Borrayo's body on the floor. Saragosa called Borrayo's name, but Borrayo did not respond. Borrayo's body appeared to have been beaten. She had a scarf wrapped tightly around her neck, and she was nude from the waist down. Her shirt and bra were pulled up, exposing one of her breasts. Borrayo's underwear and nylons were down around her left ankle, and she had a shoe strapped to her left foot. In addition, part of Borrayo's clothing was torn.

Borrayo died from asphyxiation by strangulation caused by manual use of a ligature. Her body exhibited blunt force trauma to the head and face that she had suffered prior to her death. These injuries were consistent with Borrayo having been punched or kicked in the face.

The massage parlor's receipt book showed an entry for "Leon" that evening, indicating that Borrayo was with "Leon" at the time she was killed. Records indicated that Johnson, who had been a Marine, had reported to Camp Pendleton on October 29, 1975, 24 days before Borrayo was murdered.

Homicide detective Robert Thweatt obtained a pubic hair sample from Borrayo's body during the course of the autopsy. In 2009, a DNA analyst with the San Diego Police Department inspected the pubic hair sample obtained from Borrayo's body. The

3

analyst found semen on the pubic hair.  The DNA obtained from that semen matched

Johnson's DNA.[1]  DNA from semen found on a sheet collected from the crime scene also

matched Johnson's DNA.

B.      *Procedural background*

A jury convicted Johnson of first degree murder on October 17, 2011.  The trial

court sentenced Johnson to seven years to life, with the possibility of parole.[2]  Johnson

filed a timely notice of appeal.

III.

DISCUSSION

A.      *The trial court did not abuse its discretion in permitting the prosecution to*
        *introduce evidence of Johnson's other sexual offenses*

1.      *Additional background*

Before trial, Johnson moved to exclude evidence of other sexual crimes that he

committed.  The trial court concluded that the other crimes evidence was admissible

---

[1]      The analyst found Johnson's DNA profile through a national DNA database.

[2]      The court sentenced Johnson in accordance with the law as it existed in 1975,
when the murder occurred.

pursuant to Evidence Code sections 1101 and 1108.[3]  The court also weighed the

probative value of the other crimes evidence against the danger of prejudice from the

[3]    Further statutory references are to the Evidence Code unless otherwise indicated.

Section 1101 provides in pertinent part:

> "(a) Except as provided in this section and in Sections 1102, 1103,
> 1108, and 1109, evidence of a person's character or a trait of his or
> her character (whether in the form of an opinion, evidence of
> reputation, or evidence of specific instances of his or her conduct) is
> inadmissible when offered prove his or her conduct on a specified
> occasion.

> "(b) Nothing in this section prohibits the admission of evidence that
> a person committed a crime, civil wrong, or other act when relevant
> to prove some fact (such as motive, opportunity, intent, preparation,
> plan, knowledge, identity, absence of mistake or accident, or
> whether a defendant in a prosecution for an unlawful sexual act or
> attempted unlawful sexual act did not reasonably and in good faith
> believe that the victim consented) other than his or her disposition to
> commit such an act."

Section 1108 provides in pertinent part:

> "(a) In a criminal action in which the defendant is accused of a
> sexual offense, evidence of the defendant's commission of another
> sexual offense or offenses is not made inadmissible by Section 1101,
> if the evidence is not inadmissible pursuant to Section 352.

> "[¶] . . . [¶]

> "(d) As used in this section, the following definitions shall apply: [¶]
> (1) 'Sexual offense' means a crime under the law of a state or of the
> United States that involved any of the following: [¶] (A) Any
> conduct proscribed by Section . . . 288 . . . or subdivision (b), (c), or
> (d) of Section 311.2 or Section 311.3, 311.4, 311.10, 311.11 . . . of
> the Penal Code."

5

admission of the evidence, and determined that section 352 did not preclude admission of the evidence.

At trial, the prosecutor presented evidence pertaining to two incidents in which Johnson had been involved. The first incident involved the rape of Deborah H. (Debbie)[4] in late November 1976. At that time, Debbie was a clerk at a Quick Stop store and gas station in Alabama. Johnson entered the store and said that he needed air for his tires. Debbie directed Johnson to the side of the building. Johnson left the store, but quickly returned and said, "Excuse me. I want to fuck you." Debbie tried to run out the front of the store, but Johnson prevented her from escaping and dragged her to the back of the store. Johnson pushed Debbie's pants and underwear down around one of her legs and raped her. Throughout the attack, Johnson threatened to kill Debbie if she was not quiet.

While Johnson was assaulting Debbie, a regular customer entered the store, causing a bell to ring. Johnson took a beer and left the store. The customer found Debbie, helped her get dressed, and called the police.

An officer arrested Johnson not long after receiving a call about the attack on Debbie. Debbie identified Johnson as the perpetrator, and eventually testified against him in court.[5]

---

4    We refer the victim by her first name to protect her identity and do not intend any disrespect.

5    Although the jury did not hear the result of this case against Johnson, the probation report reflects that a jury convicted Johnson of raping Debbie.

The prosecutor also presented evidence regarding the murder of Eileen Grogan in 1982. In December of that year, Grogan was working as a clerk at a Super Stop in Meridian, Mississippi, which was approximately 30-35 miles from where Johnson was living at the time. Police received a call about a suspicious person in the Super Stop store. When they responded, they found that the store was locked. Officers broke into the store and found Grogan's dead body on the floor. Grogan was nude from the waist down, except that she had her socks on. Her shirt and bra were pulled up, partially exposing her breasts. Grogan's head had been bleeding, and she had injuries on her head, face, and neck. A pathologist determined that Grogan died from asphyxiation due to strangulation, and that her skull exhibited fractures consistent with a blunt force blow to the head. In addition, DNA from semen found inside of Grogan's vagina matched Johnson's DNA.[6]

At the conclusion of the presentation of evidence in the present case, the trial court instructed the jury that the evidence of Johnson's other sexual offenses was admissible to establish his identity as Borrayo's killer, his intent in committing the offense, his motive, his plan or scheme, and that Johnson "was disposed or inclined to commit sexual offenses," such that the jury could conclude that Johnson "was likely to commit and did commit Felony Murder-Rape as charged here."

---

[6] The jury in this case did not hear about the result of the trial against Johnson for Grogan's murder, but a Mississippi jury convicted Johnson of capital murder. After an appeal, he received a sentence of life in prison for Grogan's death.

2.    *Analysis*

Johnson contends that the trial court abused its discretion in permitting the introduction of evidence of his other sexual offenses.  He asserts that the charged offense did not qualify as a sexual offense because the record does not support a finding that Borrayo was raped, and further argues that any probative value that the evidence may have had was outweighed by its prejudicial impact.[7]

Generally, evidence of a defendant's prior conduct is inadmissible when offered by the opposing party to prove the defendant's conduct on a specific occasion, unless it involves the commission of a crime, civil wrong, or other act and is relevant to prove some fact (e.g., motive, intent, plan, identity) other than a disposition to commit such an act.  (See § 1101, subds. (a), (b).)  However, the Legislature enacted section 1108 "to expand the admissibility of disposition or propensity evidence in sex offenses cases." (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).)  Thus, where a defendant is accused of a sexual offense, evidence that the defendant committed other sexual offenses is admissible, as long as the court determines that the evidence is more probative than prejudicial under section 352.  (§ 1108, subd. (a).)

---

[7]    Johnson also argues that the evidence of other sexual offenses was not admissible under section 1101.  However, given our determination that the trial court did not abuse its discretion in permitting the evidence to be introduced pursuant to section 1108, which permits a more expansive use of prior offense evidence than that permitted under section 1101, subdivision (b), we need not address the admissibility of the evidence under section 1101, subdivision (b).  (See *People v. Britt* (2002) 104 Cal.App.4th 500, 506 [because the trial court properly admitted the testimony concerning the uncharged offenses under § 1108, the appellate court had no need to reach the question of the admissibility of that evidence under § 1101].)

Johnson contends that the evidence in this case "was insufficient to sustain a finding that the killing [of] Ms. Borrayo was committed during the course of a rape," and therefore, his offense "could not be described as a 'sexual offense' within the meaning of Evidence Code section 1108." As Johnson acknowledges, the Supreme Court has determined that section 1108 applies in a case in which "the prosecution accuses the defendant of first degree felony murder with rape . . . [as] the underlying felony." (*People v. Story* (2009) 45 Cal.4th 1282, 1294 (*Story*).) Therefore, under *Story*, Johnson, who was accused of first degree felony murder with rape as the underlying felony, was accused of a sexual offense as contemplated by section 1108. Indeed, section 1108 makes it clear that evidence of other sexual offenses may be admissible where "the defendant *is accused* of a sexual offense." (§ 1108, subd. (a), italics added.) Section 1108 does not require that the prosecution's evidence meet a certain threshold or level of proof before evidence of other sexual offenses may be admitted.[8]

Even if Johnson were correct that the prosecution had the burden to present some quantum of evidence with respect to the charged sexual offense before evidence of other

---

[8]     For this reason, Johnson's reliance on *People v. Guerrero* (1976) 16 Cal.3d 719 (*Guerrero*) is misplaced. As Johnson admits, *Guerrero* was decided before section 1108 was enacted, and involved an analysis of other crimes evidence that was introduced pursuant to section 1101, *not* section 1108. The *Guerrero* court determined that evidence that the defendant had allegedly picked up a girl in his car and raped her six weeks prior to committing the offense charged in that case (i.e., murder, under both theories of felony murder with rape as the underlying felony and premeditated murder) was inadmissible under section 1101 because there was minimal evidence that the murder victim had been raped. The analysis in *Guerrero* has no application here since section 1108 specifically permits the admission of evidence where the defendant has been accused of a sexual offense.

sexual offenses could properly be admitted, Johnson's argument still fails.[9]  He contends that because Borrayo was a prostitute, the evidence did not demonstrate that the perpetrator's sexual activity with her was nonconsensual.  In making this argument, Johnson misstates the evidence.  When Borrayo's body was found, her underwear and pantyhose were around her left ankle and her left shoe was on that foot.  Johnson suggests that the only rational inference from the state of the evidence is that Borrayo was killed while putting her clothes back on after having engaged in consensual sex.  However, as the prosecutor pointed out, "[N]obody puts on one leg of your underwear, one leg of your bloomer, one leg of your pantyhose, and straps on a high heel.  You're going to do one item at a time, not one leg at a time."  We agree that a reasonable inference is that Borrayo was attacked by Johnson while she was getting dressed, that Johnson pulled the items off of her right leg so that he could sexually assault her, and that Borrayo was killed during this attack.  This inference is further supported by the evidence that Borrayo's clothing was torn, and that her clothes and bra were partially pulled up, exposing one of her breasts.

We conclude that the trial court properly determined that the evidence of Johnson's other sexual offenses was admissible under section 1108.

---

9    Although we are not convinced that Johnson is correct that the prosecution must present some evidence to support the sexual offense charge before the court may rule that it will be permitted to introduce evidence of other sexual offenses, such a standard would undoubtedly be met by evidence presented at a preliminary hearing or to a grand jury prior to the issuance of a criminal indictment.

Johnson further argues that the trial court abused its discretion by admitting this evidence because the evidence was unduly prejudicial and should have been excluded under section 352. In deciding whether to admit or exclude evidence of another sex offense that is otherwise admissible under section 1108, a trial court is to "consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]" (*Falsetta, supra,* 21 Cal.4th at p. 917.) Johnson contends that consideration of these factors should have compelled the trial court to exclude the evidence of his other sexual offenses. We disagree.

Although Johnson takes issue with the degree of similarity between the other offenses and the charged offense, there is no requirement under section 1108 that evidence of other sexual offenses be particularly similar to the charged offense. (See *People v. Frazier* (2001) 89 Cal.App.4th 30, 40-41 ["The charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108"].) In this case, the evidence of the other offenses clearly established that they were sex offenses. Further, even if a degree of similarity between the prior offenses

11

and the charged offense were required, the circumstances of those cases were similar to the offense charged here. In all three cases, the victims were women who found themselves alone with Johnson in commercial establishments. All three women were raped. During the course of all three rapes, the women were partially undressed in a similar manner. For example, both Borrayo's and Debbie's undergarments were pulled down and removed from one leg. In addition, Borrayo's and Grogan's clothing was pulled in such a manner as to partially expose their breasts. Further, both Borrayo and Grogan were strangled and had injuries to their heads and faces.

This evidence was highly relevant to establish Johnson's identity and intent. As to other factors to be considered under section 352, the other crimes were not remote in time from the crime with which Johnson was charged in this case, since all of them occurred within a period of a few years. There is no indication that this evidence was likely to confuse, mislead, or distract the jurors from determining whether Johnson committed the crime charged in this case. Further, the other crimes evidence was not overly prejudicial. Neither of the other crimes was more inflammatory than the crime alleged in this case, and the presentation of the evidence of the other crimes did not consume an inordinate amount of time. Rather, the evidence presented was limited to basic facts regarding the offenses. The prosecution did not present particularly inflammatory or shocking details about the other offenses. Given this, we conclude that the trial court did not abuse its discretion in determining under section 352 that the probative value of this evidence outweighed its prejudicial impact.

12

We therefore conclude that the trial court did not abuse its discretion in admitting the other sex crimes evidence pursuant to section 1108, subdivision (a).

B.      *The trial court properly admitted Saragosa's prior statements to police that had been recorded in a police report*

Johnson contends that the trial court violated his rights under the confrontation clause by admitting Saragosa's prior statements that were recorded in a police report prepared just after the murder. At a break during Saragosa's testimony, Saragosa asked to speak with the judge. Outside the presence of the jury, Saragosa told the court and the attorneys, "[M]y memory is just very specific about him and very specific about her, and all the other things I'm trying to block out of my mind. So sometimes when somebody says something, it jars my memory. [¶] But I feel like—I just feel like there's just certain questions that are asked or something where I'm saying 'I don't know.' It's because I'm trying to say I don't remember, but—but reading the transcript,[10] I remember some of those things. [¶] But if you're asking me do I remember now this second, no, I don't remember that that happened. But do I remember that it happened on the transcript that I read? Yes, I remember that. So I'm trying to put them both together." After hearing Saragosa's trial testimony, and her statements about her memory, the trial court ruled that Saragosa's testimony that she had lost her memory about the incident rendered her

---

10      Although Saragosa uses the word "transcript" here, she appears to have been referring to the contents of the police report, some of which had been read to her at various points during her testimony in an effort to refresh her memory of the events of that night.

13

effectively unavailable, such that the admission of her prior statements was proper under section 1237 as a past recollection recorded.[11]

Johnson acknowledges that in *People v. Cowan* (2010) 50 Cal.4th 401 (*Cowan*), the Supreme Court rejected the same argument that he is raising, but he raises the issue to preserve his claim for further federal review.  We are bound to follow *Cowan*, in which the Supreme Court determined that "admitting a witness's testimonial hearsay statement does not violate the Sixth Amendment where . . . the witness appears at trial and is subject to cross-examination about the statement.  [Citations.]"  (*Cowan*, *supra*, at p. 468.)  We therefore find no violation in the trial court's decision to admit Saragosa's prior statements at trial.

---

[11]  Section 1237 provides in pertinent part:

> "a) Evidence of a statement previously made by a witness is not made inadmissible by the hearsay rule if the statement would have been admissible if made by him while testifying, the statement concerns a matter as to which the witness has insufficient present recollection to enable him to testify fully and accurately, and the statement is contained in a writing which:
>
> "(1) Was made at a time when the fact recorded in the writing actually occurred or was fresh in the witness' memory;
>
> "(2) Was made (i) by the witness himself or under his direction or (ii) by some other person for the purpose of recording the witness' statement at the time it was made;
>
> "(3) Is offered after the witness testifies that the statement he made was a true statement of such fact; and
>
> "(4) Is offered after the writing is authenticated as an accurate record of the statement."

IV.

DISPOSITION

The judgment is affirmed.

_____

AARON, J.

WE CONCUR:

_____

BENKE, Acting P. J.

_____

McINTYRE, J.

15