Filed 7/11/16

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C075191 |
| v. | (Super. Ct. No. 11F05478) |
| ADAM BILL RANLET, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Timothy M. Frawley, Judge. Affirmed in part and reversed in part.

Paul V. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Jennevee H. DE Guzman, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II, III, IV, and V.

1

A jury convicted defendant Adam Bill Ranlet of two counts of lewd and lascivious act on a child under the age of 14 years by use of force (Pen. Code, § 288, subd. (b)(1)),[1] four counts of lewd and lascivious conduct on a child under the age of 14 years (§ 288, subd. (a)), and one count of attempted lewd and lascivious conduct on a child under the age of 14 years (§§ 664, 288, subd. (a)). The jury also found true the allegation the offenses were committed against two or more victims under the age of 14 years. The trial court sentenced defendant to serve a term of 93 years to life in prison.

On appeal, defendant contends (1) the trial court erred in admitting evidence of his participation in a private online discussion group called "ptcruzers" in which participants made thinly veiled references to sexual molestations of minors, (2) evidence defendant showed the victim a video tape depicting the rape of a 10- to 12-year-old girl should have been excluded as unduly prejudicial, (3) the jury was misinstructed that his participation in the "ptcruzer" online chat group was an uncharged crime, (4) we must review the sealed documents relating to Child Protective Services (CPS) records for the victim, and (5) we must strike one of his 15-years-to-life terms imposed for his two convictions of committing a lewd and lascivious act on a child under the age of 14 years by use of force against the same victim.

We conclude the online discussion group evidence was admissible under Evidence Code section 1101, subdivision (b), to show defendant's intent to sexually molest the two victims in this case. Defendant's argument regarding admission of the video tape has not been preserved for review because his trial attorney did not secure a ruling on his evidentiary objection. As to the instruction regarding the online discussion group, we conclude the trial court erred in stating to the jury that defendant's participation was an

---

[1]     Undesignated statutory references are to the Penal Code.

2

uncharged crime.  However, the error was harmless.  We have reviewed the sealed record and determined the trial court did not err in ordering part of the CPS record to be disclosed to the parties.  Finally, we strike one of the prison terms imposed for defendant's two convictions of section 288, subdivision (b)(1), against the same victim on the same occasion.

Accordingly, we affirm defendant's convictions but remand for resentencing.

FACTUAL AND PROCEDURAL HISTORY

### *Victim C. Doe*

C. was born in 1996 and was 17 at the time of trial.  Although defendant is her father, C. lived with her mother before her mother passed away in August 2012.  When she was eight years old in 2004, C. visited defendant approximately two or three times a week -- sometimes spending the night.  In 2004, C.'s mother was picking up her daughter when she noticed what appeared to her to be thumbnail photos of naked young children on defendant's computer.  In 2004, defendant showed C. a pornographic video involving persons whom defendant "called his friend and his [friend's] daughter."  C. testified the video showed "[h]is daughter was tied to the bed and he was, in my mind, now raping her."  C. was disturbed by the video.  Defendant also showed her pornography involving adults.

Sometime before November 2004, defendant called C. to come into his bedroom.  Defendant was "sitting on the bed with chocolate syrup on his penis" and told her:  "Lick this.  Lick the chocolate syrup.  It's a Sunda[e]."  C. refused and defendant made her get him a towel.  He told her she could go back to what she had been doing.

When C. was eight years old, defendant woke her up from a nap by putting a vibrator against her vagina.  Although she had gone to sleep wearing clothes, she was naked when she awoke.  Defendant made her read the package for the vibrator before

3

stating, "[i]t was used for girls to put on themselves or to put on each other." C. told defendant to stop and he did.

On another occasion, defendant called C. into the bedroom and told her to sit next to him on the bed. He told her to touch his erect penis, but she refused. Defendant grabbed her wrist and pulled it toward his penis, which she touched with one finger. As she tried to pull away, he opened her hand and put it on his penis. C. told him to let her go, but he held her hand there while using his other hand to move his penis back and forth for a minute. C. again told him to let her go, but he did not "until he thought it was the right time." C. asked him why he did that, and defendant responded: "I might do it again." Defendant pulled down her shorts and underwear. He then touched her vaginal area on the outside. C. was afraid of defendant and felt he would come after her if she tried to get away.

On a separate occasion, defendant told her "he wanted to do stuff." Defendant made her lie down and he took off C.'s pants and underwear. He tried to put his fingers into her vagina, but she told him to stop because it hurt. He then tried to insert his penis into her vagina, and again she told him to stop due to pain. Defendant stopped but told her she "should practice at home." C. was scared and did not tell her mother about the incident for a long time.

On another occasion, defendant called C. over to his computer and told her to read some e-mails he was sending back and forth with a woman. In the e-mails, defendant "was saying how he would do things to her daughter and she said along the lines of that's okay, she's been through that." C. remembered one of the e-mails involved "pushing [the daughter] onto the bed and holding her down."

In November 2004, defendant moved to an apartment complex on Moraine Circle. At the apartment, defendant would have C. bring his cat to him and make her watch as

4

the cat licked semen from his penis. C. felt very uncomfortable and scared each time this occurred.

C.'s mother reported the molestations to the police on December 26, 2004. C. had delayed in telling her mother about the molestations because on Father's Day in 2004, defendant had threatened to kill C.'s family -- starting with her grandmother. C. believed the threat.

In January 2005, C. was interviewed by a forensic investigator but did not tell her all the facts because she was embarrassed and in denial. C. and her mother began participating in counseling. Within two months, C. began to describe the molestations more fully as she overcame her embarrassment and fear defendant would hurt her mother.

C. had no contact with defendant from 2006 through 2010 until he sent her a message through Myspace. Defendant also called her on the telephone, but she hung up on him within two minutes. C. told her mother about the Myspace communication and her mother contacted the police. In December 2010, the police set up a pretext call between C. and defendant. During the call defendant "said he was sorry but he did not state what for."

### *Victim Ca. Doe*

Ca. Doe was born in April 1991. Her father was defendant's best friend and housemate during 2003 and 2004. Ca. and her sister visited her father during those summers when he worked approximately 10 to 12 hours per day. Ca. and her sister spent time under the care of defendant.

When Ca. was 12 or 13 years old and her father was at work, she was lying on the couch next to defendant when he began rubbing her nipple in a circular motion. Defendant was breathing heavily. Ca. felt uncomfortable, got up, and left. Defendant

5

engaged in the same conduct again with Ca. later that summer.  However, Ca. did not tell her father because she was afraid he would not believe her.

Also that summer, defendant called Ca. into his bedroom.  Defendant locked the door, sat her down on the bed, pushed her back, and started rubbing her legs.  Defendant slowly rubbed from her knee to her inner thigh and tried to open her legs.  Ca. was afraid and struggled to keep her legs closed.  She announced she had to do her homework, got off the bed, and left the room.  She did not tell her father anything that evening because she was afraid and her father had anger issues.  Ca. warned her sister not to go into the bedroom with defendant.  After returning to her mother's house, she told her mother and sister about the molestation.

In January 2012, Ca. decided to report the abuse after defendant's girlfriend contacted her and sought Ca.'s help because defendant was in trouble.

### *Online Chat Room Evidence*

On January 7, 2003, defendant created an online Yahoo account with the log-in, "Hardforsubmissive."

Federal Bureau of Investigation (FBI) agent Nikki Badolato testified that in August 2003 she was assigned to the FBI's Innocent Images Task Force.  The task force investigated child exploitation cases involving individuals who traded child pornography or enticed children to travel for sex.  Agent Badolato worked undercover by posing as a 25-year-old mother of a 3-year-old daughter.  In her undercover capacity, she requested to join a private Yahoo user group called "earlystarters," which had the purpose of locating children for sexual molestation.  The group had 511 members in October 2003.  Yahoo would periodically locate the group and delete the private discussion forum.  However, the forum's moderator would quickly reestablish a new private discussion forum and invite all prior members to rejoin the discussion.  In August 2003, a new group, "ptcruzer", was established and "the moderator made it very clear that " 'ptcruzer'

6

" was preteen cruising, so cruising for preteens." Members used coded language vaguely referencing cars to describe various types of child sexual molestation.

Agent Badolato found defendant was associated with the electronic origin record for the account hardforsubmissive@yahoo.com. Defendant's user profile for the Yahoo account included: the nickname "M.D. DADDY," location of central California, an age of 35, male gender, marital status of divorced, and occupation of "[f]reelance gynecology and photographer." Hobbies were listed as, "Relaxing, chatting, looking for that one female who has very few limits . . . my only limits are scat, bloodplay, and permanent damage." A favorite quote was listed as, "Will you shut the fuck up!!! It doesn't hurt that bad!!!"

On November 15, 2003, defendant sent the group a message stating: "Just wondering if any females out there are near Sacramento, Cali who wanna play with me and my 7-year-old daughter."

On December 17, 2003, defendant sent the group the following message: "Hey all . . . I am a single male with a 7-year-old almost 8-year-old model. [¶] I have been doing lots of maintenance on my cruzer (lube jobs, engine play. . . et cetera) but haven't 'opened' it up yet that much. [¶] I am looking for a female passenger to be with me when I do. And she can do some driving if she wants. [¶] I am in the Sacramento, Cali area and so should you be too. [¶] I am looking for a long-term relationship as . . . Well having a cruzer of your own is not necessary but it is a plus . . . lol."

Agent Badolato testified this message was innuendo for sexual molestation of a seven-year-old child. As a result of her undercover work, Agent Badolato sent information about defendant and his messages to the Sacramento FBI field office for further investigation. The matter was transferred to the California Department of Justice where Special Agent Tera Mackey took over the investigation as a member of the Sexual

7

Assault Felony Enforcement Task Force.  Working undercover, Special Agent Mackey created a Yahoo account from which she sent defendant the following message:

"Hi.  It's Janette.  I'm not sure if you remember me.  I used to be a member of the ptcruzer but my computer crashed and I am just now back up.  [¶]  I live in Sacramento area and if I remember correctly you do too.  [¶]  I have a 12-year-old daughter Hope.  It's just she and I and we [have] a very open and loving relationship.  [¶]  You and I spoke of having things in common but I don't want to share too much unless you remember me.  [¶]  We can talk more.  Janette."

That same day, defendant responded with the following message:

"Hi. . .  Yes, I am a member of the ptcruzer group. . . I don't remember chatting with you before but would love to chat sometime.  I'm usual[ly] on in the evenings at 8 p.m.'ish.  Just p.m. me.  Would love to talk about you and your daughter and me and mine."

The next day, Special Agent Mackey replied:

"Hi.  I'm so glad you're interested in talking more.  It's so hard to find like-minded people that share the same interests, especially with a daughter who's close in age to mine.  [¶]  Can you tell me a little bit about yourself?  I'm Janette and have a 12-year-old daughter Hope.  She is a beautiful daughter and very curious.  I was taught about my body at an early age and have done the same with Hope.  Associate doesn't seem to agree with this so I must be very discrete.  [¶]  Hope is my life and I must be very careful.  Obviously, not being a man, I don't have all the tools to help in Hope's teaching.  [¶]  I work a lot so it's difficult to be online around 8:00.  I will definitely check for you when I am.  Are any other times good for you?"

To this message, defendant responded as follows on the next day:

"Hi Janette.  I myself also started at a very young age.  My daughter is also as curious as I was when I was her age.  Excuse me, but before we go on, maybe I should let

you know a little of what I am looking for/not looking for. [¶] Not looking to cyber, looking to chat. Not looking to C2C/looking to meet. Looking for long-term commitment and not just a one-time thing. Someone into the same interests as me. [¶] If this is the same for you, then by all means p.m. me or email me back. LOL. [¶] Also, do you have any pics? Mine are in my photos if you want to go there."

Special Agent Mackey interpreted the message about "cyber" to "mean not to cyber sex. Not just do it online, that he was actually intending to meet."

Four days later, Special Agent Mackey responded she agreed with defendant's list of "wants and don't wants" but Yahoo "seems too difficult" to use. She proposed using AOL instead. Defendant never responded to her. She suspected her professed unfamiliarity with Yahoo tipped defendant off because she had previously stated she was a member of the Yahoo "ptcruzer" group.

### CSAAS Testimony

The prosecution called Anthony Urquiza, Ph.D., a licensed psychologist to testify as an expert on Child Sexual Abuse Accommodation Syndrome (CSAAS). Dr. Urquiza explained CSAAS was first described in a scholarly article written in 1983 to dispel misperceptions about childhood sexual abuse. Dr. Urquiza noted he was not rendering an opinion about whether a particular child was molested or whether a particular individual perpetrated an act of child molestation.

Dr. Urquiza stated CSAAS describes five categories of behaviors commonly engaged in by victims of child sexual abuse: secrecy; helplessness; entrapment and accommodation; delayed and unconvincing disclosure; and retraction. As to CSAAS, Dr. Urquiza asserted generally there is some type of misperception or myth that accompanies behaviors described by the accommodation syndrome. Dr. Urquiza also noted sometimes victims of child sexual molestation describe the abuse in a manner that appears detached or unemotional.

9

### *Defense Evidence*

The defense called Scott Morgan as a character witness. Morgan testified he had known defendant for eight years, during which he never observed defendant to act inappropriately around children, possess child pornography, or discuss any anything inappropriate about children. Morgan opined defendant is a good man and a hard worker.

## DISCUSSION

## I

### *Admissibility of Chat Room Evidence*

Defendant contends the trial court erred in admitting evidence regarding his participation with the private Yahoo discussion group "ptcruzers." Specifically, he argues the discussion group evidence was inadmissible under Evidence Code sections 1101, subdivision (b), and 1108. We are not persuaded.

## A.

### *In Limine Motion Regarding Chat Room Evidence*

Before trial, the prosecution made a motion to introduce evidence of defendant's participation in online chat room discussions as admissible under Evidence Code sections 1101, subdivision (b), and 1108. As to Evidence Code section 1101, subdivision (b), the prosecution argued the chat room evidence was admissible to show defendant's intent and common plan or scheme, as well as corroborating victim testimony. As to Evidence Code section 1108, the prosecution argued the statute was not unconstitutional and required only some similarity between the offered evidence and the charged offenses.

Defendant's trial attorney opposed admission of the evidence, arguing the chat room participation was not a prior sexual offense under Evidence Code section 1108. Although the written opposition filed by the defense did not expressly cite Evidence

Code section 1101, subdivision (b), it did assert the evidence did not meet the test for admissibility articulated in *People v. Ewoldt* (1994) 7 Cal.4th 380 (*Ewoldt*), superseded in part by the enactment of Evidence Code section 1108, as recognized in *People v. Britt* (2002) 104 Cal.App.4th 500 at page 505.[2]  Defense counsel also argued the evidence was more prejudicial than probative and should therefore be excluded under Evidence Code section 352.

The trial court found the chat room evidence admissible under Evidence Code sections 1101, subdivision (b), and 1108.

### B.

### *Evidence Code Sections 1101, subdivision (b), and 1108*

Evidence Code section 1101, subdivision (a), provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Subdivision (b) of section 1101 qualifies this rule by providing that "[n]othing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

---

[2]  We deem the discussion of the case by defendant's trial attorney sufficient to preserve for appeal the issue of admissibility of the chat room evidence under section 1101, subdivision (b).  (See *Ewoldt*, *supra*, 7 Cal.4th at pp. 386, 402 [articulating the test for admissibility under Evidence Code section 1101].)

The California Supreme Court has held subdivision (b) of Evidence Code section 1101 clarifies that " '[e]vidence that a defendant committed crimes other than those for which he [or she] is on trial is admissible when it is logically, naturally, and by reasonable inference relevant to prove some fact at issue, such as motive, intent, preparation or identity. [Citations.] The trial court judge has the discretion to admit such evidence after weighing the probative value against the prejudicial effect. [Citation.] When reviewing the admission of evidence of other offenses, a court must consider: (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant. [Citation.] Because this type of evidence can be so damaging, "[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." [Citation.]' (*People v. Daniels* (1991) 52 Cal.3d 815, 856.)" (*People v. Fuiava* (2012) 53 Cal.4th 622, 667-668.)

Even if evidence is admissible under Evidence Code section 1101, subdivision (b), it must be excluded nonetheless under Evidence Code section 352 if the probative value of the evidence is outweighed by its prejudicial effect. (*Ewoldt*, *supra*, 7 Cal.4th at p. 404.) As the California Supreme Court has explained, " 'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. "[A]ll evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is 'prejudicial.' The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual *and which has very little effect on the issues.* In applying section 352, 'prejudicial' is not synonymous with

12

'damaging.' " [Citation.]' (*People v. Karis* (1988) 46 Cal.3d 612, 638, italics added.)"
(*People v. Gionis* (1995) 9 Cal.4th 1196, 1214.)

Evidence Code section 1108 provides that, "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." The Legislature enacted section 1108 to "relax the evidentiary restraints" imposed by section 1101, "expand the admissibility of disposition or propensity evidence in sex offense cases," and "assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*People v. Falsetta* (1999) 21 Cal.4th 903, 911.) Thus, "Evidence Code section 1108 'radically changed' the general rule prohibiting propensity evidence in 'sex crime prosecutions.' (*People v. Britt* (2002) 104 Cal.App.4th 500, 505 (*Britt*).) 'By removing the restriction on character evidence in [Evidence Code] section 1101, [Evidence Code] section 1108 now "permit[s] the jury in sex offense . . . cases to consider evidence of prior offenses for any relevant purpose" [citation], subject only to the prejudicial effect versus probative value weighing process required by [Evidence Code] section 352.' (*Ibid.*) Evidence of prior crimes is admissible, unless otherwise excluded by Evidence Code section 352, whenever it may be helpful to the jury on a common sense basis, for resolution of any issue in the case, including the probability or improbability that the defendant has been falsely accused. (*Britt, supra*, at p. 506.)" (*People v. Robertson* (2012) 208 Cal.App.4th 965, 990 (*Robertson*).)

We review a trial court's admission or exclusion of evidence under the Evidence Code for abuse of discretion and reverse only if the evidentiary ruling was arbitrary or capricious as a matter of law. (*Robertson, supra*, 208 Cal.App.4th at p. 991.)

## C.

### *Admissibility of Chat Room Evidence*

The trial court did not abuse its discretion in admitting the online chat room evidence under Evidence Code section 1101, subdivision (b). Defendant was charged with several counts of forcible and nonforcible lewd and lascivious acts on children under the age of 14 years. Defendant's participation in the "ptcruzer" online chat discussion group was highly relevant to the elements of the charges he faced. A plea of not guilty puts in issue every material allegation of the accusatory pleading -- including the intent with which he engaged in the charged conduct. (*People v. Steele* (2002) 27 Cal.4th 1230, 1243.) To prove these charges the prosecution had the burden of showing defendant touched C. and Ca. with the intent to sexually gratify himself or them. (*People v. Martinez* (1995) 11 Cal.4th 434, 443-445.) By pleading not guilty, defendant essentially claimed he did not have the intent to arouse, appeal to, or gratify his lust, passions, or sexual desires. In deciding whether defendant acted with the requisite specific intent, "[t]he trier of fact looks to all the circumstances, including the charged act, to determine whether it was performed with the required specific intent." (*Id.* at p. 445, quoting *People v. Scott* (1994) 9 Cal.4th 331, 344, fn. 7.) These "relevant factors can include the defendant's extrajudicial statements." (*Martinez*, at p. 443, citing *People v. Cantrell* (1973) 8 Cal.3d 672, 681.)

Defendant's participation in and statements to the online "ptcruzer" chat room was pertinent to the charged offenses because it showed his intent to sexually molest C. and Ca. Defendant's chat room communications indicated in thinly veiled language that he had a sexual interest in his seven-year-old daughter and other girls of the same age. Moreover, defendant's message to the group indicated he had already sexually molested his daughter and was looking for a female partner to engage in further child sexual molestations. And defendant's listing of a favorite quotation as, "Will you shut the fuck

up!!!  It doesn't hurt that bad!!!" suggested his willingness to use force to engage in the sexual molestations as he did with C.

Defendant argues the evidence was far more inflammatory than probative as to the charges.  We disagree.  The chat room evidence was no more repugnant than the testimony of C. that defendant showed her a pornographic video depicting rape of a child; tried to get her to orally copulate him with chocolate syrup on his penis; forced her to touch his penis; caused her pain trying to penetrate her vagina with his fingers and penis; and had her watch his cat lick semen from his penis.  Defendant's online statements provided evidence of his intent and was no more inflammatory than the victims' testimony that was undisputedly admissible.

The trial court did not abuse its discretion when it admitted evidence of defendant's online chat room statements because the probative value substantially outweighed any prejudicial effect.[3]

## II

### *Admissibility of Pornography Shown to C.*

Defendant contends the trial court erred in admitting C.'s testimony defendant showed her a video tape depicting the rape of a 10- to 12-year-old girl by a man described by defendant as the girl's father.  Defendant asserts the evidence should have been excluded under Evidence Code section 352 as unduly prejudicial and tending to confuse the issues.  We conclude the issue has not been preserved for appeal.

---

[3]     Our conclusion the evidence was admissible under Evidence Code section 1101, subdivision (b), obviates the need to consider whether the online chat room evidence was also admissible under Evidence Code section 1108.  We also do not address whether defendant's messages to the online chat group were separately admissible as a declarations against penal interest.  (Evid. Code, § 1230.)

Before trial, the defense objected to the admission of evidence regarding pornography defendant showed to C. In particular, defense counsel objected to evidence regarding statements C. had made about defendant showing her a somewhat blurry video showing the rape of a 10- to 12-year old. Defendant's trial attorney argued the evidence was not admissible under Evidence Code section 1108 and was unduly prejudicial under section 352. However, defendant's trial attorney did not secure a ruling on the evidentiary objection but instead noted "[w]e may want to defer" the issue for later resolution. The trial court agreed.

During trial, C. testified she was between seven and nine years old when defendant showed her a video of a girl being raped by a man whom defendant "called his friend and his [friend's] daughter." The girl in the video appeared to be approximately 10 to 12 years old. To C., the scene appeared to be a rape because the girl was tied up and making "[w]hining noises like she didn't want to be there." C. was disturbed by the images.

During C.'s testimony, the defense did not object to her description of the rape video. Thus, the record does not indicate the trial court ever ruled on the pretrial defense motion to exclude the evidence.

As the California Supreme Court has explained, " 'A party desiring to preserve for appeal a challenge to the admission of evidence must comply with the provisions of Evidence Code section 353, which precludes reversal for erroneous admission of evidence unless: "There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated to make clear the specific ground of the objection or motion." ' (*People v. Morris* (1991) 53 Cal.3d 152, 187, disapproved on other grounds in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.) A properly directed motion in limine may satisfy the requirements of Evidence Code section 353 and preserve objections for appeal. (53 Cal.3d at p. 190.) *However, the proponent must*

*secure an express ruling from the court*. (*Id*. at p. 195.)" (*People v. Ramos* (1997) 15 Cal.4th 1133, 1171, italics added.)

Here, the evidentiary issue has not been preserved for appeal because defendant's trial attorney did not secure a ruling on the evidentiary objection. Defendant tenders no argument he received ineffective assistance of counsel for lack of trial court ruling on the issue of C.'s testimony about the rape video. Accordingly, we deem the issue forfeited.

## III

### *Jury Instruction Regarding Participation in Online Chat Group "ptcruzer"*

Defendant contends the trial court erred in instructing the jury his participation in the "ptcruzer" online chat group was an uncharged crime. We agree the jury instruction was erroneous but conclude the error was harmless.

### A.

### *Jury Instruction Regarding Online Chat Room Evidence*

During the jury instruction conference, the trial court noted the "chat room evidence . . . was admitted under [Evidence Code section] 1101(b)" but noted, "that's not strictly speaking as far as I know a crime in California." Instead, it was "admitted to prove other issues such as motive and intent."

Nonetheless, the trial court gave a modified version of CALCRIM Nos. 375 and 1191 that labeled defendant's participation in the "ptcruzer" online chat room as an uncharged offense. The trial court instructed the jury as follows:

"The People presented evidence of a sex offense that was not charged in this case. I am referring to evidence of alleged involvement by the defendant in an internet chat room allegedly focused on sexual activity with children. In addition, the People presented evidence of another offense that was not charged in this case, namely, the

crime of showing harmful matter to seduce a minor. The crime of showing harmful matter to seduce a minor is defined for you in Instruction 1140.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense and/or other acts. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the People have not met this burden of proof, you must disregard this evidence entirely. [¶] . . . [¶]

"If you decide that the defendant engaged in the *uncharged internet chat room behavior* you may but are not required to, conclude from that evidence that:

"• The defendant acted with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child.

"• The defendant had a motive to commit the offenses charged in this case.

"If you conclude that the defendant committed the uncharged offense and/or other conduct, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged crimes. The People must still prove the charged crimes beyond a reasonable doubt."

The trial court also instructed the jury with CALCRIM No. 1190 that "[c]onviction of a sexual assault crime may be based on the testimony of a complaining witness alone."

## B.

### *Analysis*

Defendant contends the trial court erred in labeling his participation in the online chat room as an uncharged sex offense. The Attorney General concedes defendant's communications in connection with the "ptcruzer" chat room did not constitute an

18

uncharged sexual offense. However, the Attorney General argues the instructional error was harmless under the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818, 837 (*Watson*). We agree the *Watson* test applies and conclude the instructional error was harmless.

Although omissions of an essential element of an offense from jury instructions are reviewed under the more stringent test articulated for errors of federal constitutional dimension (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705]), errors involving mistakenly worded jury instructions are reviewed under the *Watson* standard. (*People v. Flood* (1998) 18 Cal.4th 470, 487, 490; *Watson*, *supra*, 46 Cal.2d at p. 836.) The *Chapman* standard does not apply because the error did not deprive him of the right to present a defense or to have the jury instructed on every element of the offense. (See, e.g., *People v. Spencer* (1996) 51 Cal.App.4th 1208, 1221.) Instead, the erroneous labeling of the chat room evidence as an uncharged offense related only tangentially to the offenses defendant actually faced. Consequently, for the instructional error complained of in this case, we consider whether there was a "reasonable probability that the outcome of defendant's trial would have been different had the trial court properly instructed the jury." (*Flood*, at p. 490.)

As we explained in part I, *ante*, the trial court properly admitted the testimony concerning the "ptcruzer" online chat room under Evidence Code section 1101, subdivision (b), as evidence of intent. Consistent with the admission of the online chat room evidence, the trial court instructed that the People had the burden of proving defendant actually engaged in the chat room communications and they were admitted for the purposes of showing defendant's intent or motive as to the charged offenses. The jury was cautioned the chat room evidence, by itself, was insufficient to convict defendant. Labeling the chat room evidence as an uncharged offense made no difference in how the jury could use the evidence under CALCRIM Nos. 375 and 1191 as given.

The jury was not allowed to rely on the evidence beyond the use established under Evidence Code section 1101, subdivision (b).

Defendant asserts the very labeling of his chat room behavior as a sexual offense prejudiced his right to a fair trial. We reject the assertion. Defendant faced charged conduct involving forcible and nonforcible sex offenses against multiple victims under 14 years of age. The victims' testimony about defendant's crimes described disturbing and repeated behavior. The possibility defendant's online communications might be criminal made no significant difference. The mislabeling of the chat room evidence as an uncharged offense had no prejudicial effect on the fairness of the trial.

We reject defendant's reliance on *People v. Jandres* (2014) 226 Cal.App.4th 340. *Jandres* involved the erroneous admission of evidence under Evidence Code section 1108 of an attempted kidnapping involving the defendant putting his finger into the mouth of an 11-year-old to prove intent to rape an 18-year-old woman. (*Id.* at pp. 355-357 [explaining the evidence should have been excluded under Evidence Code section 352 because its prejudicial effect outweighed its probative value].) In addition to the evidentiary error in *Jandres*, the trial court erroneously instructed the jury it could consider evidence of an attempted kidnapping to show the defendant was " 'likely to commit the charged crimes,' " which included nonsex offenses. (*Id.* at p. 359.) Cumulatively, the errors in *Jandres* were prejudicial and thus reversible. (*Id.* at p. 362.) By contrast, this case does not involve evidentiary error in the admission of evidence under Evidence Code section 1101, subdivision (b). And the jury instructions given in this case properly limited the use of the online chat room evidence to the issues of intent. We conclude the mislabeling of the online chat room communications was harmless.

20

# IV

## *Review of Sealed CPS Records*

Defendant asks us to examine the sealed documents provided by CPS that were reviewed by the trial court in camera, to determine whether they related to the child molestation charges. The Attorney General expresses no objection to examination of the sealed record as requested by defendant. Consequently, we ordered the trial court to transmit the specified sealed material to this court.

We review the trial court's ruling on the motion to disclose potentially exculpatory evidence under the abuse of discretion standard of review. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.) Thus, we will not reverse unless the trial court's decision was arbitrary, capricious, or patently absurd. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.) Having reviewed the sealed record, we conclude there was no procedural or substantive error in the trial court's handling of the motion or in its ruling. (*People v. Myles* (2012) 53 Cal.4th 1181, 1209; *People v. Mooc* (2001) 26 Cal.4th 1216, 1229.)

# V

## *Sentencing on Counts 3 and 4*

Defendant contends the trial court erroneously imposed separate 15-years-to-life terms for his two convictions of committing a lewd and lascivious act on a child under the age of 14 years by use of force (§ 288, subd. (b)(1) [counts 3 & 4]). The People agree one of the 15-years-to-life terms must be stricken because the offense occurred on the same occasion against the same victim. We agree one of the terms imposed for section 288, subdivision (b)(1), must be stricken.

At the time defendant committed the offenses in this case, former section 667.61, subdivision (g), provided: "The term specified . . . shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single

21

occasion. If there are multiple victims during a single occasion, the term specified . . . shall be imposed on the defendant once for each separate victim. Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable." (Stats. 1998, ch. 936, § 9, pp. 6874 - 6876.)

The California Supreme Court has explained that "given the harshness of the punishment dictated by [former] . . . section 667.61, subdivision (g) -- of life imprisonment -- and the lack of definitive legislative direction, the rule of lenity . . . points to the conclusion that the Legislature intended to impose no more than one such sentence per victim per episode of sexually assaultive behavior." (*People v. Jones* (2001) 25 Cal.4th 98, 107 (*Jones*).[4]) The *Jones* court "conclude[d] that, for the purposes of [former] . . . section 667.61, subdivision (g), sex offenses occurred on a 'single occasion' if they were committed in close temporal and spatial proximity." (*Ibid.*) *Jones* reversed a judgment in which three consecutive life sentences that were imposed "for a sequence of sexual assaults by defendant against one victim that occurred during an uninterrupted time frame and in a single location." (*Ibid.*)

Here, the convictions for violating section 288, subdivision (b)(1), related to offenses committed on the same occasion against the same victim. Count 3 involved defendant forcing C. to put her hand on his penis and count 4 occurred almost immediately thereafter when he touched her vaginal area. Both violations of section 288, subdivision (b)(1), were committed against C. on the same occasion. Because former section 667.61, subdivision (g), provided that only one 15-years-to-life sentence could be

---

[4]    In 2006 -- after defendant committed the offenses for which he was convicted in this case -- the Legislature amended section 667.61 to eliminate the subdivision at issue in *Jones*, *supra*, 25 Cal.4th 98. (See *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1307.)

22

imposed, we order one of the sentences for either count 3 or count 4 be stricken.  (*Jones*, *supra*, 25 Cal.4th at p. 107.)

## DISPOSITION

Defendant's convictions are affirmed.  Defendant's sentence is vacated and the matter is remanded for resentencing.  On remand, the trial court shall impose a single one-strike sentence between counts 3 and 4.  The trial court is directed to prepare a corrected abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


                                        /s/
                              HOCH, J.



We concur:


        /s/
RAYE, P. J.


        /s/
MURRAY, J.


23